AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District | EASTERN | |
|---|---|---|---|
| Name: Donnell Perkins | Prisoner No. 01A3103 | Case No. | |

Place of Confinement: Green Haven Correctional Facility

**CV 04 2307**

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Donnell Perkins | v. Commissioner of Correctional Services |

The Attorney General of the State of: New York

## PETITION

1. Name and location of court which entered the judgment of conviction under attack   Supreme Court of the State of New York, County of Kings

2. Date of judgment of conviction   May 16th, 2001

3. Length of sentence   22 years to life

4. Nature of offense involved (all counts)   Murder in the Second Degree.

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐  No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒  No ☐

(2)

9. If you did appeal, answer the following:

   (a) Name of court __Appellate Division, Second Department__

   (b) Result __Judgment Affirmed__

   (c) Date of result and citation, if known __August 18th, 2003__

   (d) Grounds raised _____

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

   (1) Name of court __New York Court of Appeals__

   (2) Result __Permission for Leave to Appeal Denied__

   (3) Date of result and citation, if known __October 9th, 2003__

   (4) Grounds raised __Same as above__

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

   (1) Name of court __N/A__

   (2) Result _____

   (3) Date of result and citation, if known _____

   (4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court __Supreme Court of the State of New York, County of Kings__

    (2) Nature of proceeding __Section 440.10 of the New York Criminal Procedure Law__

    (3) Grounds raised __Ineffective assistance of counsel for failing to present an alibi defense.__

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result _Motion was denied_

(6) Date of result _September 27th, 2002_

(b) As to any second petition, application or motion give the same information:

(1) Name of court _N/A_

(2) Nature of proceeding _____

(3) Grounds raised _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐
(5) Result _____
(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☒   No ☐
(2) Second petition, etc.  Yes ☐   No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:
_N/A_

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: See annexed Addendum.

Supporting FACTS (state *briefly* without citing cases or law)

B. Ground two:

Supporting FACTS (state *briefly* without citing cases or law):

C. Ground three: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

D. Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing ____N/A____

(b) At arraignment and plea ____N/A____

AO 241 (Rev. 5/85)

(c) At trial __Howard Greenberg, 41 Schermerhorn Street, Suite 104, Brooklyn,__
__Brooklyn, New York 11201__

(d) At sentencing __Howard Greenberg, same as above__

(e) On appeal __Sharon Weintraub Dashow, 50 Court Street, Suite 702, Brooklyn,__
__Brooklyn, New York 11201__

(f) In any post-conviction proceeding __Sharon Weintraub Dashow, same as above__

(g) On appeal from any adverse ruling in a post-conviction proceeding __Sharon Weintraub Dashow, same__
__as above__

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒
   (a) If so, give name and location of court which imposed sentence to be served in the future: _____

   (b) Give date and length of the above sentence: _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_/s/ Irving Anolik_
Signature of Attorney (if any)
Irving Anolik

I declare under penalty of perjury that the foregoing is true and correct. Executed on

5-28-04
(date)
28th May 2004

x _Donnell Perkins_
Signature of Petitioner
Donnell Perkins

PAUL J BRAUN
Notary Public State of New York
Qualified in Dutchess County
Commission # 01BR6076858
Commission Expires Dec 23, 2006

(7)

# ADDENDUM TO PETITION OF DONNELL PERKINS
# FOR A WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. 2254

1.  The petitioner, Donnell Perkins, was denied the right to a fair trial when the Trial Court permitted the introduction of identification evidence with respect to the line-up that was conducted after his arrest. The line-up that was conducted in this case was fatally flawed due to the significant discrepancies between the age of the petitioner and the ages of the remaining fillers of the line-up. The petitioner was a mere seventeen years of age, while the next youngest filler was twenty four years of age; with the other fillers being twenty six, twenty seven and twenty nine years of age respectively. Furthermore, there was a significant discrepancy between the petitioner's weight, which was one hundred and forty pounds, and the weight of the fillers, which ranged from one hundred and seventy pounds to two hundred and twenty pounds. The detectives involved further disguised the line-up participants by requiring that they all wear hats.

The Trial Court opined that it was "concerned that the fillers in this line-up are significantly older than Mr. Perkins, and there is no one who even begins to match him in age as a matter of fact". Moreover, the trial Judge stated after the pretrial Wade hearings conclusion that "with respect to Mr. Perkins, the testimony that I have heard suggests to me that Mr. Perkins may very well not be the right person". Nevertheless, despite these astute observations, the Judge refused to suppress the patently unfair line-up identification of the petitioner.

This unfair ruling was especially devastating to the petitioner, since the case against him essentially consisted of a one witness identification. The eyewitness in this case, Ernest Brown,

1

had never previously seen the culprits who were responsible for the decedent's death and was a complete stranger to the petitioner. Additionally, Mr. Brown, who purportedly selected the petitioner from the line-up had only a few moments to view the perpetrators prior to the commission of this crime. Furthermore, this crime occurred very early in the morning after Mr. Brown had endured a long night of drinking alcoholic beverages.

To further compound the Trial Court's error in permitting the introduction of the line-up identification into evidence, the Judge also unfairly permitted Mr. Brown to identify the petitioner in open Court, despite there being absolutely no independent source that would establish any basis for such an identification. Significantly, Mr. Brown's testimony at trial clearly established that he had only moments to view the perpetrators of this crime. Mr. Brown's ability to identify the petitioner was so questionable that he could not select the petitioner out of a photo array during the petitioner's trial, even though Mr. Brown supposedly previously picked Mr. Perkins out of this very same photo array earlier.

The overly suggestive identification procedure employed by the detectives herein tainted the identification that the sole eyewitnesses, Mr. Brown, made of the petitioner and therefore the trial court erred by permitting the introduction of the line-up identification and the in-Court identification made by Mr. Brown during the trial.

We presume that the Court herein will ultimately permit counsel, who is representing the petitioner, to submit a Memorandum of Law setting forth the appropriate cases that impact upon these issues.

2. The facts adduced before the jury were insufficient to have warranted a conviction in this case and guilt was not proven beyond a reasonable doubt. The case herein involved the

murder of Rubin Scrubb, the decedent hereafter, during a drive by shooting in the early morning hours of December 25th, 1999. In the instant case there were only two witnesses who were present when the decedent was actually shot. Both of these witnesses were called on the People's direct case. One witness, Parminder Singh, who was working, alert and sober at the time of the incident, never identified the petitioner as a perpetrator of this crime. Moreover, Mr. Singh contradicted the other witness, Ernest Brown, who was actually present during the commission of this crime. Mr. Singh was unable to confirm any of the facts that inculpated the petitioner in the commission of this crime. **Mr. Brown was the only witness who in any way, shape, or form connected the petitioner to this crime.**

Mr. Brown, was a friend of the deceased and had been out with the deceased at a bar drinking alcoholic beverages until the early morning hours of December 25, 1999. Mr. Brown testified that upon leaving a bar called Po'k Knockers, the decedent was bumped into by an individual also leaving the bar. He described this individual as six feet two or six feet three, dark skinned male black, clean shaven with glasses and up to twenty three years of age. The petitioner, who was a mere seventeen years old at the time of the incident was only five feet ten inches tall, light to medium skin and had a light mustache, never wore glasses and had facial hair, a goatee. Furthermore, it is inconceivable that a seventeen year old would be permitted in a bar until the early morning hours considering that the legal drinking age in the State of New York is twenty one years old. No false identification was ever recovered from the seventeen year old petitioner.

Significantly, no weapon was ever recovered in this case or any other physical evidence for that matter that connected the petitioner to the commission of this crime. More disturbingly,

3

the detectives made absolutely no effort to obtain and secure the weapon that was used in this case. If the detectives were so sure that the petitioner was the culprit, of this crime one would think that they would have made some effort to remove this illegal weapon from the streets of New York. No such effort was ever made.

Mr. Brown reported when he called 911 that the vehicle involved in the shooting was a gray Infiniti Q-45. During Mr. Brown's trial testimony he claimed that the vehicle involved was not gray but rather a "crazy gray color". The detective assigned to the case testified that Mr. Brown described the color of the vehicle driven by the perpetrators as a grayish- green car. This is significant because the petitioner had no access to any gray Infiniti. The petitioner did have access to a gold Infiniti. However, it is incomprehensible how a reliable witness could confuse a gray car with a gold car. Moreover, Mr. Brown never described the car used in this crime as gold in color.

Significantly, the other witness, Mr. Singh, who was present during the shooting did not recall seeing any car enter and leave the gas station except a green car. Mr. Singh did not identify the gold Infiniti that Mr. Brown later claimed was used in the commission of this crime. Significantly, Mr. Singh had been at work when the incident occurred and had not endured a long night of drinking alcoholic beverages like Mr. Brown had.

In essence the People's entire case against the petitioner consisted of a one eyewitness identification made by an individual who had been drinking alcoholic beverages for many hours and had only moments to view the perpetrators of this crime. Furthermore, this very same witness gave an initial description of the perpetrators which in no way shape or form is consistent with that of the petitioner. Nevertheless, the only evidence inculpating the petitioner in this

crime was the overly suggestive identification procedure employed by the detectives herein, which tainted the identification that Mr. Brown allegedly made of the petitioner. We submit that the trial court erred by permitting the introduction of the line-up identification and the in-Court identification made by Mr. Brown during the trial, especially since Mr. Brown failed to identify the petitioner out of a photo array during the Trial.

Since the other evidence adduced at Trial was sterile and threadbare, we maintain that the petitioner was convicted of these most serious charges on insufficient evidence.

3. The petitioner was denied the effective assistance of counsel for several reasons: The most glaring aspect of this deprivation of effective assistance of counsel, by his lawyer Howard Greenberg, was that Mr. Greenberg demonstrated on numerous occasions his lack of knowledge and familiarity of the Rules of Evidence and his inability to ask even the most simple questions without having an objection sustained.

More specifically, Mr. Greenberg consented to allowing the admission into evidence of a photo array, such items that are usually not admissible. Nevertheless, when Ernest Brown could not select the petitioner out of said photo array, Mr. Greenberg failed to seek a mistrial or at the very least a continuance of the trial so that the issue of probable cause for the petitioner's initial apprehension and the subsequent line-up procedure employed could be reargued. During the pretrial Wade hearing to determine the admissibility of the line-up conducted herein, the People's sole witness, Detective Pitre, testified that the petitioner was selected out of this photo array by Mr. Brown. The fact that Mr. Brown purportedly selected the petitioner out of this very same photo array as a perpetrator of this crime was used as the basis to establish the probable cause necessary for the petitioner's initial apprehension and inclusion in the previously mentioned line-

5

up procedure. Mr. Brown was not called by either side

Nevertheless, attorney Greenberg never made the proper objections or sought the aforementioned relief when this information came to light. Given the fact that this was only a one witness identification case, the suppression of Mr. Brown's identification of the petitioner was no less than crucial.

Attorney Greenberg further demonstrated his ineffectiveness by asking numerous inappropriate questions during the voir dire of perspective jurors. Attorney Greenberg's continued his inability to ask a simple question without having an objection sustained throughout the trial. The questions that attorney Greenberg were asking were run on and irrelevant questions that could not help but detract from his representation of the petitioner. The Prosecutor voiced numerous objections, almost all of which were sustained. The Court finally admonished defense counsel about the compound and inappropriate questions that he was asking to the People's witnesses. Attorney Greenberg replied in the following manner "Judge, I'll try to do better. I'll try not to be compound and not ask leading questions, I'll try not to testify, and I'll try to do better. I think I'll be able to do better." Unfortunately, for the petitioner, attorney Greenberg never was able to do better.

More disturbing, was that attorney Greenberg had a valid alibi defense available to the petitioner which he failed to employ. Defense counsel had two credible alibi witnesses, Lily Mayo and Donnell Mayo, ready, willing and able to testify, that the petitioner was home with them during the time frame when this crime was committed. Nevertheless, despite the fact that these two credible witnesses were outside the courtroom ready to testify that the petitioner was with them, his family, attorney Greenberg chose not to call them to the stand. It is incredible that

6

an effective attorney would allow his two most significant witnesses to not testify on the petitioner's behalf. It is inexcusable for competent counsel to allow two credible witnesses, whose testimony would unequivocally clear the petitioner, to remain silent. This is especially true in a one witness identification case.

Moreover, attorney Greenberg failed to explore the testimony of additional potential witnesses that were known to him. There were two disinterested witnesses who gave statements to the police at the scene that were not consistent with the testimony of Mr. Brown. These witnesses were never called by defense counsel to testify.

After the petitioners conviction, attorney Greenberg further demonstrated his ineffectiveness by filing a letter with the Trial Court instead of the appropriate CPL 330 motion. Not only was attorney Greenberg's actions procedurally improper, it was also highly ineffective in its content.

4. During the petitioner's pretrial Wade hearing to suppress the line-up identification, the People's sole witness, Detective Anthony Pitre clearly testified that the sole basis for the apprehension of the petitioner was that Ernest Brown, the sole eyewitness to the crime, selected Mr. Perkins out of a photo array. Disturbingly, during the petitioner's trial Mr. Brown stated that he did not recognize anyone from that very same photo array. The trial Judge was the same Judge who presided over the pretrial Wade hearing that was conducted to determine whether the line-up identification should be suppressed.

The trial Judge was confronted with an obviously inconsistent set of facts from what was testified to by Detective Pitre at the pretrial *Wade* suppression hearing as to whom Mr. Brown selected from a photo array. Since, Mr. Brown was unable to recognize the petitioner in the photo

7

array, the Judge should have re-evaluated the basis for the petitioner's initial apprehension and subsequent inclusion in the line-up. Furthermore, the Judge now had to question the reliability of detective Pitre's testimony with respect to the ultimate outcome of the line-up procedure. Despite being confronted with this essential inconsistency from what was previously established through Detective Pitre's testimony at the pretrial hearing and what Mr. Brown was actually unable to confirm, the trial Court took no *Sua Sponte* action whatsoever. We maintain that since the People conceded at the pretrial Wade hearing that the sole basis for the petitioner's initial apprehension and subsequent inclusion in the line-up held herein, was that the petitioner was selected by Ernest Brown, a purported eyewitness to the crime, from a photo array. Nevertheless, since Mr. Brown could not identify the petitioner as a perpetrator of this crime from the photo array at trial we believe that the Court had an obligation to re-visit the issue of why the petitioner was ever apprehended in the first place. This is especially important in a one witness identification case where the witness had been drinking alcoholic beverages for an extended period of time and only had a brief opportunity to view the culprits.

If no probable cause existed for the petitioner's initial apprehension, then it stands to reason that the line-up procedure employed thereafter, his detention could not have been lawful and should have been suppressed. Instead, despite the fact that the Court was now aware that no probable cause existed for the defendant's initial apprehension, the trial Judge still permitted the Prosecution to introduce a line-up identification that was obtained subsequent to the petitioner's warrant less apprehension. At the very least the Court should have inquired to Detective Pitre as to why he testified that the petitioner was selected from a photo array by Mr. Brown and now several weeks later Mr. Brown could not recognize or identify the petitioner from that very same

8

photo array.

The line-up identification testimony in a one witness identification case has a major impact on the People's case and, therefore, this issue as to the introduction of this line-up is of paramount concern and importance. Especially, in this case where the remainder of the evidence adduced at trial was sterile and threadbare.

5. The trial Court further deprived the petitioner of a fair trial when the Judge curtailed the defense counsel's summation for no legally sufficient reason. During attorney Greenberg's summation, which was less than an hour, the trial Judge interrupted defense counsel numerous times in an effort to expedite defense counsel's summation. The Court's action led to several confrontations with defense counsel that were on the record. Finally, the Court directed that attorney Greenberg "sit down". The trial Court's unwarranted conduct exacerbated an already unfair situation whereby attorney Greenberg was rendered hopelessly ineffective.

The trial Court's admonitions were made in open Court and before the jury. We believe that the Court's conduct inadvertently conveyed a sense of irritation and exasperation with the defense to the jury at precisely the time that the jury needed to be open and receptive to attorney Greenberg's arguments. The jurors were left to surmise that if an authoritative figure like the Judge did not want to entertain defense counsel's closing arguments, then these arguments could not have any merit.

Moreover, Mr. Greenberg's summation was unceremoniously ended without its logical conclusion. This needless confrontation was instigated by the Judge's desire to save several minutes of the Court's time. We maintain that the trial Judge's decision to argue over several minutes of the summation during a Court proceeding where the petitioner is on trial for

9

Murder is a clear abuse of the Court's discretion in determining the length of a summation. We submit that the seriousness of the charges, namely murder, in this trial and its ramifications upon the petitioner, would warrant a Court to allow a summation to extend at the very least up to one hour. Unfortunately, the Court in the instant matter demonstrated no such patience.

The trial Court's decision to arbitrarily curtail defense counsel's summation not only deprived the petitioner to a fair trial, but also deprived the petitioner to his Sixth Amendment right to counsel and his right to Due Process which are both secured by the Federal and New York State Constitutions.