| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DONNELL PERKINS,

                    Petitioner,

                                          **MEMORANDUM & ORDER**

      -against-                                04-CV-2307(ERK)

COMMISSIONER OF CORRECTIONAL
SERVICES,

                    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Korman, Ch. J.

     I assume familiarity with the facts underlying this petition for a writ of habeas corpus on which I heard oral argument on December 29, 2005. Petitioner raises six grounds as a basis for upsetting his conviction. Except for certain aspects of his claim of ineffective assistance of counsel, the District Attorney argues that each of those claims are procedurally forfeited. While petitioner raised those claims in his Appellate Division brief, his application for leave to appeal to the Court of Appeals merely appended his Appellate Division brief without specifically outlining the issues on which leave to appeal was sought. Nevertheless, the Second Circuit has held that this is enough to preserve the issues for habeas corpus review. <u>Galdamez v. Kean</u>, 394 F.3d 68 (2d Cir. 2005). Accordingly, I address petitioner's claims on the merits.

     1.     Petitioner's argument that the lineup was suggestive was expressly rejected by the trial judge. I have looked at the photograph of the array (in which petitioner is number 5) and I cannot say that he stands out from the rest in any significant respect. (The photograph is

entered on the docket as entry #13). Nevertheless, the lineup was suggestive for a different reason never raised by petitioner: it took place within four hours after the eyewitness picked petitioner out of a photographic array. She was obviously going to choose the person whose photograph she had earlier selected. While the eyewitness identification had absolutely no probative value and should have been excluded for that reason alone, the fact that petitioner was initially selected by the eyewitness from a photographic array that was not suggestive makes it impossible to say that the lineup created "a very substantial likelihood of misidentification." Manson v. Brathwaite, 432 U.S. 98, 116 ( 1977). It also provided an independent source for the in-court identification.

    2.    Petitioner claims that the evidence was insufficient as a matter of law to establish his guilt beyond a reasonable doubt. In his Appellate Division brief, petitioner argued only that the verdict was contrary to the weight of the evidence. This state law claim invokes the power of the Appellate Division and the Court of Appeals (in capital cases) to go beyond reviewing the record for legal sufficiency. Nevertheless, the conclusion that the verdict was not contrary to the weight of the evidence necessarily resolves the issue whether the evidence was legally sufficient to sustain the conviction. As the Court of Appeals has explained:

> <u>A guilty verdict based on a legally sufficient case is not the end of our inquiry but the beginning of our weight of the evidence review.</u> Indeed . . . '[w]e are obliged to weigh the evidence and form a conclusion as to the facts. It is not sufficient, as in most of the cases with us, to find evidence which presents a question of fact; it is necessary to go further before we affirm a conviction and find that the evidence is of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt.'

People v. Cahill, 2 N.Y.3d 14, 58 (2003) (internal citations omitted). (emphasis supplied).

Obviously, it would be impossible to find that "the evidence is of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt" without first concluding that the evidence was legally sufficient to sustain the verdict. Indeed, as Cahill observed, a conclusion that the evidence is legally sufficient "is the beginning of our weight of the evidence inquiry." People v. Cahill, 2 N.Y.3d at 58. (emphasis supplied). Moreover, the legal sufficiency standard in New York is substantially the same as the Due Process Clause standard adopted by the Supreme Court. Specifically, in assessing legal sufficiency, "a Court must 'determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial.'" People v. Cahill, 2 N.Y.3d at 57 (internal citations omitted). Again, the Appellate Division must have necessary resolved the Due Process issue.

Under these circumstances, petitioner's challenge to the weight of the evidence has "afford[ed] the state courts a meaningful opportunity to consider" petitioner's claim "without interference from the federal judiciary." Vazquez v. Hillery, 474 U.S. 254, 257 (1986), see also O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)("comity . . . dictates that when a prisoner alleges that his continued confinement for a state conviction violates federal law, the state courts should first have the opportunity to review this claim and provide necessary relief"). The state courts here had the opportunity to review petitioner's sufficiency of the evidence claim. The fact that petitioner framed his argument as a challenge to the weight of the evidence rather than its legal sufficiency, does not support the argument of the District

3

Attorney that petitioner failed to exhaust his state remedies or the corollary conclusion that, because there are no more state remedies for him to exhaust, the claim has been procedurally forfeited.

Turning to the merits of the sufficiency claim, I agree with petitioner that the quality of the uncorroborated eyewitness identification here is troubling. Of "all the various kinds of evidence," testimony of eyewitnesses "is the least reliable especially where unsupported by corroborating evidence." Jackson v. Fogg, 589 F.2d 108, 112 (2d Cir. 1978). The reliability of the identification here is undermined even more because the description initially provided by the eyewitness was materially different from petitioner's physical appearance. As summarized in petitioner's Appellate Division Brief:

> [T]here were significant discrepancies between those descriptions and the physical characteristics of Appellant. Appellant is light skinned, not dark skinned. Appellant was seventeen years of age at the time of his arrest, not up to twenty-three years of age. Appellant was five feet ten inches; not six foot two to six foot three. Although Mr. Brown testified that the passenger wore glasses, Appellant was not wearing glasses. Although Mr. Brown testified that the passenger was clean shaven, Appellant had a light mustache and a goatee.

Id. at 37.

Nevertheless, the issue of whether to credit the eyewitness identification is for the jury to decide unless the circumstances surrounding the pretrial identification of the eyewitness create "a very substantial likelihood of misidentification." Short of that point, "[w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some

4

questionable feature." Manson v. Brathwaite, 432 U.S. 98, 116 (1977); see also United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979). This reflects the application to photographic identification of the general rule that "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Hoffa v. United States, 385 U.S. 293, 311 (1966). Barring some change in the standard for evaluating the legal sufficiency of the evidence in cases involving eyewitness identifications, I regret that I am unable to issue the writ.

3. Similarly without merit is petitioner's claim that trial judge improperly curtailed the summation of his attorney. The summation consumes approximately thirty pages of transcript; it was longer than the summation made on behalf of petitioner's co-defendant and only seventeen pages less that the summation of the Assistant District Attorney who was responding to two summations. Petitioner's counsel had an opportunity to fully develop his summation and stress the weaknesses of the case. The trial judge did not abuse her discretion in her effort to limit the summation — an effort that appeared to have little effect.

4. Petitioner's claim that his attorney failed to seek a mistrial or continuance to explore the issue of probable cause for his arrest, fails to satisfy the second prong of Strickland. While it is true that at trial the eyewitness testified that he had not made an identification from a photograph, the witness signed a document that contained the photographs in the array and in that indicated he had selected number 6. (This photograph is entered on the docket as entry #12). Very likely the witness was confused or mistaken when he testified at

5

trial. Under these circumstances, I cannot say that there is a reasonable probability that, at a reopened suppression hearing, petitioner would have been successful in establishing that the identification that provided the probable cause for his arrest (of which the lineup was the fruit), had not been made. Nor is there any basis for the claim that the trial judge should have <u>sua sponte</u> revisited the issue of probable cause. Petitioner's related ineffective assistance of counsel claim based on petitioner's counsel consent to allowing the photographic array into evidence (when it is generally inadmissible in New York) fails if only because the array was never admitted. Tr. 335. Indeed, the eyewitness testified that he had not made any identification from photographs that he was shown. Tr. 332.

    5.    The remaining ineffective assistance of counsel claims which contain a three pronged assault on the conduct of the trial, require some brief additional discussion. Petitioner argues that, "although he clearly did ask questions relevant to the issues at hand, his [lawyer's] run-on and irrelevant questions and his inappropriate questions could not but help to detract from his representation and thus impact negatively upon appellant." Pet. App. Div. Br. at 24. I have read significant parts of the transcript. My reading confirms that petitioner's counsel effectively cross-examined the prosecution witnesses. Indeed, the cross-examination of Detective Petrie is an example of examination; it elicited facts that were extremely helpful to the defense case. Tr. 656-749. While petitioner's counsel may have asked questions that were properly the subject of an objection, they reflected what is a common defense counsel practice of formulating questions in ways that they hope will give them an edge.

Petitioner's final claim of incompetence was raised in a motion to vacate the conviction prior perfecting his appeal. The motion was based on the failure of counsel to call

6

two alibi witnesses, his refusal to permit petitioner to testify and his failure to call two witnesses who heard shots fired at the time of the incident. Respondent's Ex. D. Petitioner's allegation that his attorney did not allow him to testify was rejected because it was refuted by a colloquy between petitioner and the trial judge after his attorney advised her that petitioner would not testify. Tr. 808-49. The trial judge rejected the remaining allegations on the dubious ground that, "sufficient facts appeared on the record to permit appellate review on [petitioner's as yet] unperfected appeal." In the context of the present case, this holding is inconsistent with settled New York law that "in the typical case it would be better, and in some cases essential that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post conviction proceeding brought under CPL § 440.10." People v. Brown, 45 N.Y.2d 852, 854 (1978).

Confirming the fact that the claims in this case could only be resolved on facts outside the record, and were thus not amenable to review on direct appeal, the District Attorney has obtained an affidavit from defense counsel explaining why these witnesses were not called. In the affidavit, which was first filed in opposition to the petition filed here, petitioner's trial counsel avers:

> Regarding the proposed alibi witnesses in defendant's case, Donnell Mayo, defendant's father hand Lily Mayo, defendant's aunt and codefendant's mother, I conferred with Mr. Perkins and the witnesses on an ongoing basis before trial and during trial concerning the trial's progress and the defense strategy.
>
> At the close of the state's case, I made the strategic decision not to call the alibi witnesses based on, in my profession judgment, the weaknesses in the state's case and the fact that a parent or other family member is the least likely alibi witness to be believed by the jury. Moreover, in my professional judgment, I determined that Mr. Perkins's case would not have benefitted from subjecting his father

> to cross-examination about matters related to his father's credibility.
>
> I discussed these issues with Mr. Perkins and the alibi witnesses and advised them that it would be best to rest his case without having them testify.
>
> Based upon our discussions, defendant and the alibi witnesses, in the end, acquiesced to my advice to rest Mr. Perkins's case without their testimony.

Petitioner's counsel also addressed his alleged failure to call two other witnesses.

> [T]he witnesses to whom he [petitioner] appears to refer were not eyewitnesses, but "ear-witnesses." They had not witnessed the crime but had heard gunshots and subsequently, upon looking outside, saw someone talking on the telephone and then to the police. Moreover, one recalled seeing a white van parked near the telephone and the other recalled seeing a white utility vehicle pass by. In my profession judgment, because these witnesses were not eyewitnesses to the crime, they had nothing to offer which would have been beneficial to Mr. Perkins's defense. Furthermore, to the extent that defendant may believe that the evidence pertaining to the sighting of a white van/utility vehicle was material to his defense, that evidence was before the jury having been elicited from Detective Pitre by codefenant's counsel on cross-examination.

The affidavit is are not contradicted by petitioner, who is represented by retained counsel here, and is sufficient to defeat a claim of ineffective assistance of counsel. This is not a case in which counsel did not interview the alibi witnesses. Indeed, he filed a pretrial notice of alibi. In the end, he made a judgment based on "the weaknesses in the state's case" among other factors. Based largely on facts that petitioner's trial counsel elicited, petitioner's retained counsel here makes a compelling case that the evidence was insufficient to sustain the verdict. Pet. Memo pp. 6-8. In the end the decision not to call alibi witnesses was a strategic call. See United States v. Nersesion, 824 F.2d 1294, 1321 (2d Cir. 1987)("The decision

whether to call any witnesses on behalf of the defendant, and if so, which witnesses to call, is a tactical decision of the sort engaged in by lawyers everyday.") As Judge Hellerstein recently wrote, trial lawyers have a serious dilemma in circumstances such as these:

> The standard of reasonable doubt, applied to shaky prosecution witnesses, may be compromised if one's own witnesses also are shaky. Trial lawyers then become concerned that juries come to judgments on the basis of relative credibility of witnesses, rather than the doubt that can arise from judging the prosecution's witnesses' credibility in isolation. Logically, one might think that an alibi witness should increase doubt; experientially, trial lawyers are likely to believe the contrary. See, e.g., F. Lee Bailey & Kenneth J. Fishman, Criminal Trial Techniques § 32:19 (2004)("Tactically, the defense of alibi is both the best and worst of defenses. The disinterested alibi witness who can withstand cross-examination unimpeached can bring certain acquittal. On the other hand, the alibi witness who is proven a liar can destroy the effectiveness of your defense."). Thus, unless alibi witnesses are strong and corroborative proofs support their assertions, experienced defense counsel may eschew potentials of alibi proofs for fear that juries may assess relative credibility rather than reasonable doubt.

Sampler v. Grenier, 2005 WL 1140541, at 4 (S.D.N.Y. 2005). While other lawyers may have made a different strategic decision than petitioner's counsel made, it is difficult to conclude his decision was unreasonable. Moreover, particularly because petitioner chose not to testify, it is impossible to say that there was a reasonable probability that the outcome would have been different if the alibi witnesses testified. The same is true of the other two witnesses petitioner alleges should have been called.

## Conclusion

The petition is denied. I grant the petitioner a certificate of appealability with respect to (1) the issues relating to the admissibility of the eyewitness identification at the lineup and at trial, (2) the sufficiency of the evidence and (3) the issues relating to the ineffective

9

assistance of counsel raised in his motion to vacate the conviction filed prior to perfecting his appeal.

**SO ORDERED:**

Brooklyn, New York
December 30, 2005

S/
Edward R. Korman
United States Chief District Judge